I should have done this at the start of the whole proceeding, but I was so enamored with swearing my clerk, Lily, in that I forgot entirely to thank Judge Andrews for joining our court today. We very much appreciate both his work in helping us decide these cases, as well as the expertise he brings to bear from a very lengthy career on the trial bench, so thank you so much for joining us. Thank you. It's a pleasure. Thank you. Our third case for argument today is 24-1467, Gamevice v. Nintendo. Counsel, how do I pronounce your name? Pucknees, Your Honor. Mr. Pucknees, please. Like a hockey injury. Mr. Pucknees, please proceed. Thank you, Your Honor. May it please the Court. I'd like to cover three issues today. One is the Evans and Van Moore issue, and then the confinement structures and the apertures limitations. Starting with Evans and Van Moore, I'd like to talk about their application, their requirements, and their limitations. Evans and Van Moore were devised as an efficient way to dispose of doomed cases. The accused product turns out to be prior art, and so the patentee cannot prove infringement without conceding anticipation of the device that they're accusing of infringement. We embrace the logic. We embrace the holdings of those cases. But what those cases don't do is they don't change the law of anticipation, which requires a factual determination that the prior art is identical to the claims, and they don't change the law of infringement, which has the same analysis. You look at the claims, and is it identical? How is the factual determination rendered in Van Moore and Evans Schooling? It's rendered by a stipulation that the defendant goes into as part of the motion. The cases require a concession of infringement for the purposes of the motion, and I'm going to get to what that means after. But so if they lose the motion, there's no penalty. And again, we have no objection to that as well. That's not an unusual situation. So is your argument that that's how we should be treating what occurred here, is a concession by Nintendo for the purposes of the anticipation argument?  Yeah. But they won. Part. They won in part. They got a favorable judgment in their favor, and that changes everything. With regard to certain claims. To certain claims. They did not get a favorable judgment with regard to other claims. So why does the stipulation that they made bind them with regard to claims for which they were not successful? So let's talk about... Because it's conditional stipulation. It is a conditional stipulation. They get an order in their favor that... Let's take claims 16 and 17, because I think that most starkly illustrates the inconsistency between those orders. No, but the stip... It's irrelevant how similar the claims are or different the claims are. If it is a conditional stipulation, i.e. we only stipulate this if we prevail, and if we don't, then we don't stipulate it, then why does it matter? Because what the stipulation... Because the stipulation is, the accused product has every limitation of the claims, but it's  For purposes of anticipation. For the purposes of this. And then they get a judgment in their favor. No, they didn't prevail on these claims. They... On claims... Let's take 16, for example. It doesn't... I don't need to know anything about the specific claims. They didn't prevail on those claims. So why are they bound by a conditional stipulation that they made only for anticipation if they should prevail? Because a necessary part of that stipulation is that the limitations in the claims that they anticipate are present in the switch. Only for purposes of anticipation, and they didn't prevail. So why are they bound by a stipulation that was clearly conditional only for purposes of anticipation? You agree that if the district court had rejected the anticipation argument with regard to all of the claims, they would not be bound by the stipulation, correct? Correct. So why are they bound by it with regard to the claims for which the district court rejected it? Because it's what happens in the next order. What happens in the infringement order that comes next that makes it inconsistent. No, but they're not bound by it. If they're not bound by it because it was conditional and they didn't prevail, then it has no impact on what comes next. You cannot... I mean, the problem is... See, here's my problem. You don't mention the words judicial estoppel. You don't mention the words law of the case. You did at the district court, but not on appeal. They've dropped out entirely of your brief. There's not a single case cited anywhere, nor did you point me to any case sites about how judicial estoppel could apply when there's some sort of split the baby ruling where they won in part, but not others. I mean, it caused me to do an awful lot of research on my own on those issues, but you didn't raise any of them on appeal. You know what else you didn't raise on appeal? If we agreed with you, wouldn't the outcome be we actually vacate the anticipation ruling? I actually have been struggling with it myself, but you didn't ask for that relief. You didn't even appeal the anticipation ruling. And so you've left me... I'll be honest. I want to give you relief, but you've left me with no ability to do so because you haven't appealed any of the arguments that I think it's possible you could have won on, and you didn't even ask me to vacate the decision that could have been wrong in light of the judicial grant of their stipulation. I don't know what to do with this case. Well, let me start with what you're saying, that let's vacate the anticipation order. That's what we proposed at the district court level. That's the last thing we proposed. The last paper we filed was you cannot issue a judgment on these two orders.  I scoured. I was looking for it. Yeah. No, not on this. In this appeal, neither party has asked you to vacate the anticipation. Why in the world would they? Those claims are invalid. We're not going to come up and say, hey, we won. Those claims are invalid. I want you to vacate it. But then the question is, why would we? Because if we're going to lose on infringement, then it doesn't matter whether the claims are... We would find ourselves in the Evans and Van Moor situation. But let me try one more time why the inconsistency becomes relevant when the infringement order gets issued. And that's because the infringement order says two limitations are missing from the statute. I mean, does your client just not care about the claims? I mean, I thought that these claims were subject of maybe licenses with other parties, asserted in other areas. I would have thought your client would have cared about the validity of these claims and not like it out there that all those broader claims were invalidated. So why would we care? I mean, I guess I would have thought your client would care. But I guess not. And I also thought you would have put more stock in your other infringement arguments and said there's questions of fact. And so maybe you'd want all the claims back on the table. But that's just me speculating and this is your litigation strategy, so I probably shouldn't use any of your time.  Go ahead. Continue. Okay. I will... When the infringement decision comes down and says, for example, in Claim 16, confinement structures and apertures are not there in Claim 16. But those same limitations, those limitations are in Claim 17, which depends from 16, and that's anticipated. So that's what creates the inconsistency, and that's why the orders can't exist together. And that's what we were arguing on the inconsistency, because once an order issues, it becomes, the considerations change, right? Because before an order issues, we're advocates, and we're going to reach for any argument at hand that's going to help our client. And so we're allowed to make inconsistent arguments. But that's not true once an order issues. Once an order issues, that limits the arguments you can make. That's the whole basis of judicial estoppel. It's the whole basis of issue and claim preclusion. Now, on the issue of whether we raise those issues on appeal, Your Honor, we mentioned estoppel in all three of our Statement of the Issues. We raised estoppel in Law of the Case in the introduction. Where did you raise judicial estoppel? Tell me. Well, we use the word estoppel. I don't know that we use the word judicial estoppel. Where did you use the word estoppel in a manner that would convey to me that this is a judicial estoppel argument? In the Statement of the Issues on page 1, there is assuming Nintendo was not estopped from arguing, so it's referring to the previous issue, issue 1. That's the estoppel argument. That's the inconsistencies. I'm sorry. I have no clue what page you're on. Can you help me out? Page 2 of the Bluebird, Your Honor. And the words judicial estoppel are not there, but the idea behind it, the fact that you cannot argue against, you cannot obtain an order and then argue an inconsistent position later on to the detriment of the other side, that's throughout our whole brief. The only thing that's changed in our briefs is the focus of where the error is. In the district court, of course, we're going to focus on Nintendo's behavior and Nintendo's arguments, and they're not allowed to make those arguments. That's been done. The district court allowed them to make the arguments, and so now we're going to explain why the district court made errors. And so its errors were in its interpretation of Van Moore and Evans, saying that this can be a switch, that you can turn on and off at will, and it's just not possible. The interesting thing, part of this appeal is trying to understand what is the nature of a grant by a district court of an Evans cooling motion. Yeah, I agree. Because what's happening with this type of motion is all the underlying facts are just assumed to be true. There's no actual merits-based evaluation of whether or not a particular product meets all of the claim limitations. It's essentially based on a concession by the plaintiff. It's a stipulation by the defendant to the plaintiff's facts. It's turning to what the plaintiff has said and using what the plaintiff has said to assume that all of those statements and allegations are true, and then if you can't win on priority, then you'll lose on anticipation without anybody actually knowing whether that's true or not. And so then the next question is, when we flip the page and move to an infringement chapter of the proceeding, do we just piggyback off of all those assumptions in a new context, or in that new context, do we have to start anew and actually evaluate those underlying fact findings that were never actually really made in the Evans cooling motion? Well, I would say that they were made in the sense that the parties stipulated to it. And if, for example, Nintendo were to win on only half the claims like it did and were to go forward, it could have asked the district court to take that anticipation finding off the table so that now it could make its infringement arguments in a way that's not inconsistent with its concession in the anticipation side. So I agree that in close to 30 years of Evans, this is the first time, the first case, we've been able to see anything even close to this situation. But it is.  Pardon me? It feels like a one-timer. Except it was a two-timer, and more. Well, Evans, yes. Except this context is the defendant wins on some of the claims and doesn't win on other claims. So this sort of split outcome. And so you end up, I think, of necessity having inconsistent outcomes on the anticipation and infringement side. What if the facts here were different? What if, in response to an interrogatory, your side, the plaintiff, said, if we don't win on priority, then we admit that our claims are anticipated by this Nintendo Switch product. And then the other side filed a motion and said, let's hash it out on priority now. Because if we win on priority, we have everything right here. The plaintiff has given us everything in this response to an interrogatory.  All these admissions work in our favor. We're not saying that we necessarily agree with it. We don't have to. The plaintiff has already given away the store. There's got to be some consequence to the order accepting that. Our position is the order changes everything. Because the obverse could be true. I could have an interrogatory answer from them that says the Switch lacks. Do you have any case law to support you that there must be some consequence? No, I don't think there's case law on either. Well, on that an order changes everything, that's judicial estoppel. Where's the cases? What case did you say? Anywhere in your brief. Any case. One case. Any case. If I can just turn to my other, my non-infringement arguments, if I may. On confinement structures, the district court construed it to be physical components that hold a computing device. Dr. Singhouse, our expert, pointed to the rails that are screwed into the side of the Switch as... Are you, on infringement, are you turning now to the confinement structure or the apertures? Confinement structure. So I think you're right about that. So why don't you turn to apertures? So let me go to apertures. I find a problem with the holes and the joystick. I actually am willing to concede an agreement with you that there is a fact finding on whether the buttons are held in place by the holes, which are sized appropriately to the buttons. But what I don't see is evidence that you presented that the joystick is held at all by the holes. And, in fact, it seems movable in the hole, implying it's not held by the hole. And there's a screw that holds it. And so I don't see your experts saying anything in particular about the joystick. So where is the question of fact that is created with regard to the apertures? Well, it's the same as in the apertures. So if you turn to Appendix 940, and you'll see how the switches, buttons, and joysticks are similar in the sense that they both have flanges at the bottom.  Appendix 940? 940. Appendix 940. Okay. And is this your expert's report? This is our expert's report. Okay. And he addresses both the joysticks and the buttons. Where? What paragraph? That's in the paragraph 50. The buttons are not attached to their base. Anything internal, the apertures were too large, and the buttons would fall out by the Joy-Con. And the joystick has the same configuration. It has a base, a flange. Where does your expert say this? Where does the expert say anything about the joystick? I don't see anything about the joystick. I completely agree. He said the buttons and explained why. The diameter of the holes in the buttons, they would fall out if the holes weren't sized exactly right. But that doesn't seem to be – he doesn't seem to testify that the same thing is true with the joystick. I don't see anything. Well, but the analysis is saying because the joystick and the buttons both have – You can tell me the analysis is saying that. Okay. I can't find it. I'll look when we look if he says the same sort of arrangement of how the joysticks and the buttons on the Joy-Cons are secured. So that's paragraph 53. So he is saying that the joysticks are secured in the Joy-Cons at paragraph 53. And the reason they are is because they have the same kind of flange arrangement that the buttons do. They are wider at the base, and they will not pull through the button. Now, there are also screws. Do you dispute that there are screws? No, I do not. There are screws there also, but there's nothing in the claims that says only the holes can secure the buttons or the joysticks. And, in fact, when you go to the patent figure 27, you'll see that almost identical arrangement with buttons with flanges and joysticks with a wider base with a flange itself and two screws as well. It's almost the identical arrangement that's used in the switch. And the district court's judgment would take that off the table. It would just make those embodiments not covered by the claim. And that's just not right. Okay. Well, you've used all your time, all your rebuttal time. Thank you. I'll restore some rebuttal time. Mr. Begatel? Thank you, Your Honor. Mr. Begatel, do you mind if I ask you to start in reverse order? You're going to be instinctively you're going to want to start with the big issue, but I'd rather you kind of work backwards and start with this apertures issue. I'll go in whatever order the court prefers. So I'll start with non-infringement. Only the 713 patent is left, so we can win on either apertures that secure or confinement structures. I'm sorry. Why do you say only the one patent is left? The other one was knocked out in an IPR that they didn't appeal. We filed a notice of supplemental authority. Sorry. I didn't see that. There was also another patent that wasn't appealed, so we're down to just the 713. And all the claims include both of those limitations. And we actually have three ways we can win. We can win on apertures that secure. We can win on confinement structures under the district court's construction. And we can win under confinement structures under what we think is the correct EANS plus function construction. Can you start with apertures? Absolutely. And tell me what. Why there isn't a question of that. Okay. Let me just start with what's undisputed is the meaning of aperture is a hole or an opening, and the meaning of secure is to hold something in place. That's not really disputed. Their argument below was that the holes work just like the aperture in the patent. The patent never really explained how a hole can restrain anything. Columns four and seven talk about apertures that facilitate an exchange of interchangeable modules. So you can click, let's say, a keyboard out or something else in. I mean, counsel, this is on summary judgment. So it's whether there's a question of fact. If their expert claims the holes are sized so that the buttons fit snugly in them and that holds them in place through the simple friction of the sides of the buttons, the sides of the inside of the holes, that's not for me to decide. That's summary judgment. That's a question of fact for the jury. However, it's undisputed that they don't fit in that way. There are annuluses or rings around them deliberately in place that was undisputed testimony by our expert that they do not rub up against. If that were the case, maybe you could say, okay, well, the hole, the edge of the hole, they're really the same thing. But there is an annulus around each one of those. So they may feel it. You're saying annulus. You mean like basically a circular gap between the edges of the button and then the edges of the holes? Exactly. So that they don't interfere. The district court mentions it. It's cited in our brief. But for both the joysticks and the buttons, it works that way. So the only thing he could say is that if you had a flange that were, you know, much smaller, it might fall outside the hole. Well, that's counterfactual. That's not the point. They're essentially relying on the entire housing to serve as the aperture. That's not an aperture. So neither the apertures themselves nor the rims around the aperture are contributing, even contributing to holding either the joysticks or the buttons in place. How do I know that? Their expert testified to the contrary on page 940 and 941. And isn't that a null of the question of fact? Well, no, because they did not dispute the annulus issue, and the district court mentioned that. So what he's saying, all he's saying here is on 940 and 941, is that if the apertures were too large, the buttons would fall out. That's really his entire logic. Yes, which equates to they're keeping them in place. No, it doesn't because that's. It at least creates a question of fact about it. But they argue, they argue that Dr. Singh has testified the holes in the Joy-Con prevent the button from falling out. No, no, no. Your Honor, I think the problem is that he's making a hypothetical that doesn't relate to the actual facts of the case, which involve a hole, an annulus. It's not disputed. We had our witness who's the mechanical engineer who testified about how it's put together. We had our expert testify that they did not dispute any of that. So then if it's not the holes that are securing the buttons in place, what is it? Is it the housing wall that's pressing the buttons in place? And then the holes in the housing are what the buttons poke through? It differs a little bit with respect to the joysticks and the buttons. The joysticks are a little easier. But just stick with the buttons. Stick with the buttons. Okay, sure. The buttons are attached to a module that has a flange on the bottom. So the flange actually is touching an actuator, and the whole thing is pinned into the bottom of the housing. When you push the two parts of the housing together, that keeps it in place. So it's the flange and the housing that are being pushed together. It's nothing in the hole or the edge of the hole because that's not big enough. The buttons protrude through, and they are not limited in how they move. Let me see if I can find the testimony of Mr. Nishikawa. It starts at 2493. I can find the jump site if you want. That was undisputed about how that works. And really, it's not a disputed fact that there is this ring around the buttons and the joysticks. Look at paragraph 54. Dr. Singho says, while there is a flange, it is the interaction of that flange with the holes and the proper sizing of the holes that allow the buttons to both protrude from the housing and yet still be secured in place. Well, he has that conclusion, but he doesn't analyze, doesn't tell you how the hole can restrain anything. And a hole can't. Yes, he does. He says it's the proper sizing of the holes that allows that to occur. But the hole physically cannot restrain anything. It has to be part of the housing that it's hitting. It just can't be the hole. The hole is a void. So when he's talking about the sizing of the hole, he's basically saying if the hole were smaller or bigger, it might have a different result. But that's not the point. The way it's actually— Absolutely. If the hole is snug fit, appropriately sized, it can hold something in place, the size of the hole. Well, Your Honor, I guess I can't make my argument any clearer. I think if you're not agreeing with that, then I'll move on to confinement structures because— Well, but hold on a second. Don't you just—if you win on joysticks, then don't you win the case? Yes, if they're accusing both joysticks and buttons, then it requires each of them to be secured in that fashion. You said if. Why did you say if? Well, I think that's what they did below. It's not clear to me whether they're still arguing about joysticks or not. Because my understanding is because of the each limitation, if your side is correct on joysticks, then there's no infringement. Then it needs to work for each of them. I agree with that. I agree with that. If I may briefly discuss confinement structures, unless you want me to turn back to the Estoppel issue, I'll continue with confinement structures. There's a district courts construction, which is a physical component that holds a computing device. Our argument on this is fairly simple as well. The problem is that the Nintendo Switch console is a single integrated device. The rails are attached very early on, kind of like building your house. You put up the beams. You put up the header. It's attached very early on. Let's assume that's a fact question, whether it's fair to consider it as part of the console or whether it ought to be considered as add-ons. Well, even if you consider it to be an add-on, our position, and I think the district court agreed with this, is that the rails have to hold a separate computing device. And their definition of a computing device was a little bit strange. They did not include the main frame to which everything is secured. So everything is screwed into the main frame. And they said that's not part of the computing device. And neither are the antennas. The antennas are part of it. Various other things are not part of the computing device because they needed to have the computing device be held. So what's going on here is they're trying to rely entirely on the back. But how is the back attached? There's a screw that just runs through a hole in the rails. And it goes into this main frame that serves as basically the support for everything. So what their expert said is, well, when you tighten it up, the screw is tightened up, then the rail is going to touch a portion of the back. Okay. Even if that's true, that's not holding the entire computing device. The computing device has lots of other components. And all of those things are screwed into something else. They're screwed into the main frame. So then what would be an example in your view of how to change up your product and those side rails, such that you think there would be an open fact question as to whether these add-on components would be possibly holding? I think you'd have to do a major, major redesign and do something more like what the patent shows, which is basically something that makes a little U or something like that. It clamps on the device. Because I think the way we do it is just so fundamentally different. If you consider the entire intended… It does look very different than the embodiment that they have. But at the same time, we're getting into a murky gray area trying to figure out when do we cross the threshold into satisfying the whole limitation. I understand that. But if you consider the computing device to be the entire console, then the rails are part of the console. If you consider the computing device to be sort of this collection of parts within, then the rails don't hold all that. At best, they're in pressing contact according to their expert. I don't agree with that, but let's give what their expert said credence. That doesn't tell you it holds all the rest of the computing device. And those are not connected, right? They're connected. They're all screwed into this main frame. And the main frame they're saying is not part of the computing device. The theory just doesn't hold together. If I may, I'd like to make a pitch. If you don't affirm on apertures and you don't affirm under the district court's construction of… I think at this point you've got to move to the estoppel. You have five minutes left, and it's a big issue. Okay. I will rely on our brief for purposes of the 112F construction. So let's turn to the Evans-VanMoore estoppel issue. The question is whether the summary judgment of invalidity somehow turned into something that was binding on us for purposes of a later summary judgment of non-effective. How do you characterize what you did in this instance? Was it a stipulation, a conditional stipulation? It wasn't even a stipulation. We simply… Then what was it? Because that sounds weird to me, right? In anticipation, the district court does have to make fact findings. He can make them or they can be stipulated to. No. Well, okay. I would put it this way. What we were relying on is an admission that they made in their complaint. It could be in a complaint. It could be in infringement contentions. It could be in response to a discovery request. In any way, that becomes an admission by the opposing party on which we can rely. We are accepting the truth of that for purposes of this motion. It's not a stipulation that it's true. The district court never made any finding that the Nintendo Switch actually practiced the limitations of the anticipated claims.  The district court doesn't have to make a finding if it's stipulated. But the point was that you can decide things based on admissions by a party or you can decide things… Because then they're stipulated to. Well, okay. If you want to call it a stipulation, it wasn't technically, but it's equivalent to in the sense that for purposes of that motion, we would accept their allegation. So if that's a stipulation, then we'll call it a stipulation. But that stipulation was entirely limited to that motion. We made absolutely clear that we did not agree that the Nintendo Switch practiced all those limitations. But is that relevant to the question of judicial estoppel? Absolutely. How so? Because, well, there are three elements of judicial estoppel, none of which they've addressed in their brief, as you pointed out. It's for abuse of discretion. So the first is, is there an inconsistency in our positions? No, there was not an inconsistency. Well, actually, there is. There's surely an inconsistency. Our device has all of these limitations for anticipation. Our device does not have all these limitations for validity. That is an inconsistency. Well… Move on to the next one because you're never going to agree on that one, so please move on to the next one. Okay. But it's related in the sense that later on you have to show that there's been a switch in a position that was misleading the district court. No, it doesn't have to be misleading. Oh, that's part of the New Hampshire v. Maine test. What case law exactly says misleading? New Hampshire v. Maine. The Supreme Court talks about it. I believe it's in our brief. I can find it for you. It would create the appearance that the district court was misled, that the tribunal had been misled, I think is the way it's phrased. We cite it on page 40 of our brief. Well, I'll read to you from New Hampshire v. Maine because I have it right in front of me, and I'm happy to look at whatever page you'd like me to look at. On page 749, I'll give you all of the quotes about judicial estoppel. Here's how they lay out the test. Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who is acquiesced in the position formally taken by him. I think if you skip to page 750 and 751, where they lay out the elements, the second element is the court accepted the earlier position such that acceptance of both the previous position and the subsequent position would create a perception that the court was misled on one or the other occasion, resulting in unfair advantage or unfair detriment to the opposing party. So the district court was not in any way misled. It knew exactly that we were not conceding factual infringement. It said so. It never found that the other side would obtain or that we were obtaining some sort of unfair detriment. He found to the contrary. They have never shown any abuse of discretion in those findings. I mean, this is a fundamentally intellectually displeasing case. It's just I don't know what to do with it because it's not fair for you to invalidate claims by virtue of saying your device has all of the elements and then avoid infringement of the same patent by saying our device does not have all the elements. Not if you succeeded. I agree. If you didn't succeed, you can plead in the alternative. I have no problem with you pleading in the alternative. But once you've succeeded, even in part, I don't see how you get to switch horses halfway through the race. Well, I don't think we switched horses because we settled on non-infringement. Let me make my last point, which is that even if you think that we changed horses, which I don't think we did, the district court's ultimate judgment was in the alternative for all of the claims. All the things that were found anticipated were also found to be non-infringed. So if you want to disregard the ruling on anticipation, even though they haven't appealed it, and just affirm a non-infringement, you can. Let's see what kind of compromise we can strike right now. Okay. Vacate. If I find non-infringement, are you willing to acquiesce in us vacating the anticipation judgment? Because that would wipe away the fundamental unfairness I perceive and not cause me to do something that might create really wacky case law. Yes, we will accept a judgment of non-infringement of all claims. And vacating the anticipation findings. Yes. Do we have the authority to do that? I think in the sense that the district court has made an alternative judgment, you can address it. You can waive their waiver or you can decline it. Well, if your opponent agrees to that, I think we could hold it and give the district court a chance to give an indicative ruling that it would do that. That would solve that problem. I think we know what the district court would do because it's got an alternative judgment. And we prefer to keep the anticipation, but if that's going to be an impediment to affirming, we'll take the judgment of non-infringement and go home. And that will be the end of it. Excellent doing business with you, counsel. I'm going to restore your rebuttal time because we went over. Thank you, Your Honor. First, let me unwind that last bargain you just struck with opposing counsel. That's between me and him. I want to talk about just a couple points on apertures. This idea that each equals every, and I understand that there are some cases that say that. That issue was never briefed in the district court, so there's not a claim construction that says in these claims, in this patent, each means every. If we were given the opportunity to brief that, I would point to figures 27 and 28, which show the exact joysticks coming through apertures in exactly the same way Nintendo does. As saying that clearly in these claims, each doesn't mean every. It means a subset of the whole secure input devices. Your figure is 27-28. They include screws to fasten down the joystick? They do. You can see the screw holes very clearly in the – it's Appendix 73 here, Your Honor. And you can see a joystick there with two screw holes, two tabs that the screws go through, and two screws behind it. So under their construction of each, that would eliminate this embodiment from the claims. But again, this was never raised below. It was never briefed below. And so even if you think that the joysticks argument falls short, the buttons argument is strong and should stay. Did the district court rely in part on the joystick question? I think the district court found the joysticks are not secured by the holes, right? Correct. Despite the testimony that I pointed out earlier that our experts said they were secured by the holes. The last thing I want – and it's about the waiver of the estoppel issue. Everything, every discomfort that Your Honor raised with the judgment, that's in our blue brief. New Hampshire v. Maine isn't cited in our blue brief. No, you gave me no law that allows me to dig in. I had to go do it all on my own and figure out what happens when they get like a partial victory on the basis of a potential stipulation. You didn't give me anything. Let me apologize for not citing the case. But I will tell you, I'm aware – if you're aware of any cases about a partial judgment, I'm all ears because we looked and we couldn't find it on that case. So that's why there's no case law on partial judgment. But certainly the concept of judicial estoppel, and I apologize we didn't cite the case, but all those concepts that were just – everything we've discussed today is in the blue brief. To the extent it's necessary, the gray brief explicitly discusses it at pages 21 and 22. Unless there's anything else, Your Honors. I mean, New Hampshire v. Maine, this rule known as judicial estoppel, and it's quoting Pegram, another Supreme Court case, quote, generally prevents a party from prevailing in one phase of the case on an argument, then relying on a contradictory argument to prevail in another phase of the case. Seems like kind of on point. Yeah, well, and we definitely have that concept in our brief. They're not allowed to win on anticipation and later turn around and throw that out the window for infringement. So the idea is there. And again, I apologize, Your Honor, for not citing that case. But certainly – Any case. You probably ought to stop there because – I know when to stop. Thank you, Your Honor. All right, I thank both counsel for the argument. Case is taken under submission.